UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

NEW YORK STATE FIREARMS ASSOCIATION,

et al.,                                                              Civil Action No. 23-CV-6524-FPG

               *Plaintiffs*,                           PLAINTIFFS' MEMORANDUM
v.                                                                         IN SUPPORT OF MOTION FOR
                                                                              TEMPORARY RESTRAINING
STEVEN A. NIGRELLI, in his official capacity as      ORDER AND PRELIMINARY
Acting Superintendent of the New York State Police,  INJUNCTION

               *Defendant*.
_____/

## INTRODUCTION

The Second Amendment presents a special consideration where plaintiffs invoke the equitable power of a court to preserve existing liberties through injunctive relief. The Second Amendment "'elevates above all other interests the right of law-abiding, responsible citizens to use arms'" for self-defense. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2131 (2022) (quoting *District of Columbia, et al. v. Heller*, 554 U.S. 570, 635 (2008)). The preservation and maintenance of this right "demands [the courts'] unqualified deference." *Id*. Here, Plaintiffs seek to preserve "the last actual, peaceable uncontested status which preceded the pending controversy", when they could purchase ammunition free from extensive, continuous background checks and fees. *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (internal quotations and citations omitted). In other words, Plaintiffs seek to preserve their Second Amendment rights prior to New York's imposition of novel, faulty, continuous background checks and fees for ammunition purchases. <u>Indeed, at the time of this filing, Plaintiffs are endeavoring the enjoin the wholesale prevention of ammunition sales, because the background check law is operative, but the background check system is not.</u>

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1
TABLE OF CONTENTS................................................................................................................... i
TABLE OF AUTHORITIES ........................................................................................................... ii
STATEMENT OF FACTS ............................................................................................................... 2
ARGUMENT .................................................................................................................................... 3
   I.    The Plaintiffs Have a Strong Likelihood of Success on the Merits ..................................... 3
   II.    Plaintiffs Will Continue to Suffer Irreparable Harm if the Background Checks are not Restrained and Enjoined ......................................................................................................... 7
   III.    The Public Interest Weighs in Favor of a Temporary Restraining Order and Preliminary Injunction ................................................................................................................. 7
CONCLUSION................................................................................................................................. 8

## TABLE OF AUTHORITIES

**Cases**

*Antonyuk v. Hochul*, 635 F. Supp. 3d 111, 149 (N.D.N.Y. 2022) .................................................. 9

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 336–37 (2010) ...................................... 4

*Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) ..................................................... 9

*Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966) ........................................ 6, 7

*Hund v. Cuomo*, 501 F. Supp. 3d 185, 208–209 (W.D.N.Y. 2020) ................................................ 8

*Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ........................ 4

*Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022) ......................................................................... 4

*Martin v. Warren*, 482 F. Supp. 3d 51, 68 (W.D.N.Y. 2020) ......................................................... 3

*Minneapolis Star and Tribune Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575 (1983) ........... 7

*New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022) .............................. 1, 5

*North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 37
   (2d Cir. 2018) ............................................................................................................................. 1

*Rhode v. Becerra*, 445 F.Supp.3d 902, 931 (S.D. Cal. 2020) ......................................................... 6

*Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 WL 17985966 ............................................. 3, 8

*United States v. Miller*, 307 U.S. 174, 180 (1939) ......................................................................... 4

**Statutes**

N.Y. Exec. § 228 ......................................................................................................................... 2, 3
N.Y. Penal §§ 400.02, 400.03 ................................................................................................. 2, 3, 6

**Other Authorities**

Fed. R. Civ. P. 65(c) ........................................................................................................................ 8
U.S. Const. amend. II ...................................................................................................................... 2

## STATEMENT OF FACTS

In 2022, New York amended its law to impose preconditions for purchasing ammunition, which is protected as "arms" that one has a right to keep and bear under the Second Amendment. U.S. CONST. amend. II; *see* 2022 Sess. Law of N.Y. Ch. 371 (S. 51001) (MCKINNEY'S July 1, 2022). The laws require a series of background checks for anyone buying ammunition at any time. N.Y. PENAL §§ 400.02, 400.03 and N.Y. EXEC. § 228. Specifically:

- N.Y. PENAL § 400.02(2) establishes a state license and record database to record ammunition sales and demands that no ammunition transfers shall occur without contacting the license and record database.

- N.Y. PENAL § 400.03(2), (6) provides that sellers of ammunition must keep an electronic record of ammunition sales and conduct a background check through the state license and record database. It further requires any ammunition transactions to occur in person.

- N.Y. EXEC. § 228 requires the Superintendent of the New York State Police to create of a statewide license and record database and to conduct ammunition background checks and requires that he charge a fee to any firearms dealer or ammunition seller per background check.

Though the law places the fee on the firearms dealer or ammunition seller conducting the background check, in reality each person purchasing ammunition will face the background check *and* the $2.50 fee as a precondition for purchasing ammunition. Amend. Compl. ¶ 21; Exhibit A (Dorr Declaration).

Plaintiffs George Borrello, David DiPietro, and William Ortman would purchase ammunition but for these burdensome background checks and associated fees, as would numerous members of the American Firearms Association. Amend. Compl. ¶¶ 22-24, 27. Plaintiff Ortman would purchase a box of 100 rounds of .22 Long Rifle ammunition from Plaintiff DiPietro but for the requirements that they use a licensed intermediary or Mr. DiPietro becomes a licensed dealer to make an $8.00 sale for a $2.50 fee. *Id.* ¶26. Their ability to purchase ammunition is wholly

infringed by the background checks and associated fees under N.Y. PENAL §§ 400.02, 400.03 and N.Y. EXEC. § 228.

Plaintiff Dorr, though disgusted with the background check system, is willing to give it a try. Amend. Compl. ¶25. However, he attempted to purchase .22 Long Rifle ammunition at two different locations in Canandaigua, New York, on September 14, 2023. He was informed each time that background checks via the statewide license and record database are not working, and neither store would sell him ammunition. Exhibit A (Dorr Declaration). <u>At the time of this filing, ammunition sales are effectively halted in this district under the law.</u>

### ARGUMENT

A party seeking preliminary injunctive relief "'must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.'" *Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 WL 17985966, at *4 (W.D.N.Y. Dec. 29, 2022) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)). Moreover, "'[i]n the Second Circuit, the standard for issuance of a temporary restraining order ("TRO") is the same as the standard for a preliminary injunction.'" *Martin v. Warren*, 482 F. Supp. 3d 51, 68 (W.D.N.Y. 2020) (quoting *Fairfield Cty. Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd as modified sub nom. Fairfield Cty. Med. Ass'n v. United Healthcare of New England, Inc.*, 557 F. App'x 53 (2d Cir. 2014)). The Plaintiffs can establish all three elements here.

**I.  The Plaintiffs Have a Strong Likelihood of Success on the Merits**

The background checks utilized by the statewide license and record database for ammunition purchases infringe upon the Plaintiffs' Second Amendment rights by imposing

preconditions to keeping and bearing arms. Rather than operate as a one-time burden for the purchase of a firearm, these laws impose ongoing burdens with each purchase of ammunition. This is bad enough when the statewide license and record database is working: when it's not, <u>ammunition sales are prevented entirely</u>, as they were for Aaron Dorr on September 14, 2023. **Exh. @** (Dorr Declaration).

The right to possess firearms for protection "implies a corresponding right" to obtain ammunition. *Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022) (vacated on other grounds). Just as infringements of the First Amendment may occur "at different points in the speech process[,]" so too may Second Amendment infringements occur at different points in the self-protection process. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 336–37 (2010). Thus, infringements of the acquisition of ammunition are infringements of the Second Amendment: "without bullets, the right to bear arms would be meaningless." *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014); *see also United States v. Miller*, 307 U.S. 174, 180 (1939). The acquisition of ammunition is fully protected under the Second Amendment. *Miller*, 307 U.S. at 180. Per *Bruen*, the "Constitution presumptively protects that conduct." 142 S.Ct. at 2130.

Unlike ordinary one-time background checks associated with firearms, New York's ahistorical scheme applies indiscriminately with each purchase of ammunition—whether by box, brick, or case. Each ammunition purchase requires the payment of the state's $2.50 fee along with the good faith hope that New York's background check database will operate correctly. (For Plaintiff Dorr, it did not operate at all on September 14, 2023.) Instead of ammunition purchases being as simple as picking up pastrami at the local deli—as they have been throughout American history—law-abiding firearms owners like the Plaintiffs must pass a background check each time

and pay a special fee to the state for the privilege of exercising their rights. This is not how constitutional rights work.

New York's ahistorical ammunition law cannot survive scrutiny under *New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). Per *Bruen*, this Court must ask whether the conduct in which an individual seeks to engage in is recognized under the Second Amendment as interpreted by the Supreme Court. *Id.* at 2129–30. If yes, then "the Constitution presumptively protects that conduct," *id.* at 2130, and "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at 2127. Only if the Defendant can "identify a well-established and representative historical analogue" to the law in controversy, "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command[.]" *Id.* at 2130 (internal quotations and citations omitted).

New York's never-ending background checks for ammunition purchases are novel and enjoy no historical support. Rather, they act to deter law-abiding citizens from purchasing ammunition and engaging in protected Second Amendment conduct. Amend. Compl. ¶¶ 22-24, 27. As noted by a sister federal court, imposing background checks on ammunition purchases has "no historical pedigree." *Rhode v. Becerra*, 445 F.Supp.3d 902, 931 (S.D. Cal. 2020). Indeed, requiring a "background check each time ammunition is purchased has never been implemented before." *Id.* Outside of California and New York—trailblazers in Second Amendment infringements—ammunition background checks simply lack any historical support. Per *Bruen*, this is fatal to New York's ability to conduct ammunition background checks and impose fees for the same. This is not an instance where a state is imposing background checks on modern and special forms of ammunition—like exploding ammunition or armor-piercing rounds. Rather, New York

5

elected to impose a series of never-ending background checks with accompanying fees for the purchase of any ammunition, including commonly-used rounds such as .22 Long Rifle and 9mm. Against this, history bears no analogue and under the burden-shifting framework of *Bruen*, the law fails review.

      The fees imposed for the ammunition background checks raise a separate constitutional concern. It is beyond the authority of government to precondition the exercise of an enumerated right on the payment of a special fee. For example, when Virginia imposed a $1.50 fee as a precondition to vote—a poll tax—it violated the right to vote and the Equal Protection Clause of the Fourteenth Amendment. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966) ("the right to vote is too precious, too fundamental to be so burdened or conditioned."). Just the same, where Minnesota imposed a "use tax" on the cost of paper and ink products consumed in news periodicals, it violated the First Amendment. *Minneapolis Star and Tribune Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575 (1983). This is because government taxation schemes that impose differential treatment to those engaged in constitutionally protected liberties are presumptively unconstitutional. *Id*. at 585. New York's novel, never-ending ammunition background checks must fail under similar reasoning. This is so because they precondition Second Amendment rights on payment of a fee and the right of self-defense is simply "too precious, too fundamental to be so burdened or conditioned." *Harper*, 383 U.S. at 670.

      Neither is there an historical analogue that permits laws that prohibit ammunition purchases when a background check system fails, as the Defendant's has. Exhibit A (Dorr Affidavit). At the very least, the requirement that Plaintiffs are subject to the background check system must be restrained until the Defendant can demonstrate to this Court that it even works. See N.Y. Penal §§ 400.02(2); 400.03(3) (prohibiting the sale of ammunition without utilizing the statewide license

and record database). Against the background checks and fees, the Plaintiffs have strong likelihood of success on the merits. Against the outright prohibition of ammunition purchases during outages of the background check system, the likelihood of success must be nothing less than guaranteed.

**II.     Plaintiffs Will Continue to Suffer Irreparable Harm if the Background Checks are not Restrained and Enjoined**

The background checks and fees for the same through the statewide license and record database have irreparably harmed the Plaintiffs and will continue to do so unless this court restrains and enjoins the laws at issue. Irreparable harm exists "'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" *Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 WL 17985966, at *13 (W.D.N.Y. Dec. 29, 2022) (quoting *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)). The "'denial of a constitutional right ordinarily warrants a finding of irreparable harm.'" Spencer, 2022 WL 17985966 at *13 (quoting *A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021)). The background checks and associated fees wholly foreclose Plaintiffs Borrello, DiPietro, Ortman and myriad members of the NYSFA from exercising their Second Amendment Rights. They uniquely harm Mr. Dorr and other members of the NYSFA in that, currently, even if one is willing to undergo the background check and pay the fee, they cannot do so: throughout this District and New York State, ammunition purchases have been halted. This is a wholesale denial of constitutional rights, and irreparable harm.

**III.    The Public Interest Weighs in Favor of a Temporary Restraining Order and Preliminary Injunction[1]**

---

[1] Plaintiffs respectfully request that this Court exercise its discretion under Federal Rule of Civil Procedure 65(c) and waive any requirement to post security because a temporary restraining order and preliminary injunction enjoining enforcement of an unconstitutional state law "would not have a financial impact" on the Defendant (or the government as a whole) and security "would not

The public interest strongly favors injunctive relief. The public has a significant interest in the "strong sense of the safety that [ammunition] regularly provides, or would provide, to the many law-abiding responsible citizens in the state too powerless to physically defend themselves[.]" *Antonyuk v. Bruen*, 624 F. Supp. 3d 210, 260 (N.D.N.Y. 2022). It cannot be that this interest is subject to a faulty (and, as of this filing, quite faulted) computer system. Exh. @ (Dorr Declaration).

But even when that system is working it will serve no public interest. The Defendant may argue, but will be unable to show, that the purchase of ammunition without background checks "resulted in an increase in [gun] violence, or that public safety would be impaired" if background checks are enjoined. *Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 WL 17985966, at *14 (W.D.N.Y. Dec. 29, 2022). New York's ammunition background checks "prevent law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms", including Plaintiffs Borrello, DiPietro, Ortman and myriad members of the NYSFA. *Bruen*, 142 S. Ct. at 2156. It is in the public interest for this Court to affirm that the Second Amendment is not a "second-class right" by temporarily restraining and then preliminarily enjoining enforcement of ammunition background checks. *Id.*

## CONCLUSION

---

mitigate" any alleged harm to the Defendant's enforcement interests. *Hund v. Cuomo*, 501 F. Supp. 3d 185, 208–209 (W.D.N.Y. 2020); *see also Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) ("Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement [in certain situations]."); *Antonyuk v. Hochul*, 635 F. Supp. 3d 111, 149 (N.D.N.Y. 2022) (*appeal withdrawn,* No. 22-2379, 2022 WL 19396512 (2d Cir. Nov. 14, 2022)) ("Plaintiffs should be, and are, excused from giving security because there has been no proof of any 'costs and damages' that would have been sustained by any Defendant 'found to have been wrongfully enjoined or restrained' under Fed. R. Civ. P. 65(c).").

8

For the foregoing reasons, the Court should temporarily restrain and then preliminarily enjoin the Defendant's use of the statewide record and database for ammunition purchases. At a minimum, the Court should order that ammunition purchases may not be prevented under N.Y. PENAL §§ 400.02, 400.03, and N.Y. Exec. § 228 when the statewide record and database for ammunition purchases fails to work.

Dated: September 15, 2023.

Respectfully submitted,

| | |
|---|---|
| Stephen R. Klein* | /s/ Ginger D. Schröder |
| BARR & KLEIN PLLC | Ginger D. Schröder |
| 1629 K St. N.W. Ste. 300 | Schröder, Joseph & Associates, LLP |
| Washington, DC 20006 | 394 Franklin Street, Second Floor |
| (202) 804-6676 | Buffalo, New York 14202 |
| steve@barrklein.com | (716) 863-4000 |
| | gschroder@sjalegal.com |
| Benjamin Barr* | |
| BARR & KLEIN PLLC | |
| 444 N. Michigan Avenue, Ste. 1200 | |
| Chicago, IL 60611 | |
| (202) 595-4671 | |
| ben@barrklein.com | |
| * *Pro hac vice* application pending. | |

*Attorneys for George Borrello, David DiPietro, William Ortman, Aaron Dorr and the New York S*