

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES  
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL  
LITIGATION BUREAU

December 11, 2023

**Via ECF**

The Honorable Frank P. Geraci, Jr.
United States District Court for the Western District of New York
United States Courthouse
100 State Street
Rochester, New York 14614

      Re:    *New York State Firearms Association, et al. v. Chiumento*, No. 23-cv-6524-FPG

Dear Judge Geraci,

      This office represents defendant Dominick L. Chiumento, in his official capacity as Acting Superintendent of the New York State Police. I write to update the court regarding two major firearms law decisions issued by the Second Circuit on Friday, Antonyuk v. Chiumento, No. 22-2908, ___ F.4th ___, 2023 WL 8518003 (2d Cir. Dec. 8, 2023), which substantially upheld the provisions of New York's Concealed Carry Improvement Act against several Second Amendment challenges, and Gazzola v. Hochul, No. 22-3068, ___ F.4th ___, 2023 WL 8494188 (2d Cir. Dec. 8, 2023), which rejected several dealers' Second Amendment and preemption-based challenges to New York's laws regulating the sale of guns, including the ammunition background check requirement at issue in this matter. These cases, decided unanimously and signed by all three judges on a bipartisan panel, are the first significant Second Circuit precedents applying the Supreme Court's decision in NYSRPA v. Bruen, 597 U.S. 1 (2022), providing important guidance for this and other Second Amendment cases.

      In Antonyuk, the Second Circuit rejected in significant part Second Amendment challenges against a wide variety of New York's firearm licensing laws, laws protecting the public by limiting firearms in vulnerable places, and laws requiring persons to obtain consent before carrying weapons onto someone's private property. Although the laws at issue in Antonyuk are analytically distinct from the background check at issue here, the Circuit provided detailed instructions for how courts should evaluate history in a Bruen challenge.

      In particular, the Circuit provided a seven-point guide to which historical sources are relevant and how they should be weighed. See 2023 WL 8518003 at *12-16. The Circuit noted that in a challenge to a state law such as this one, "the prevailing understanding of the right to bear arms in 1868 and 1791 are both focal points of our analysis," id. at *15, that "courts must be

Hon. Frank P. Geraci, Jr.
December 11, 2023
Page 2 of 3

particularly attuned to the reality that the issues we face today are different from those faced in medieval England, the Founding Era, the Antebellum Era, and Reconstruction," id. at *13, and that "the absence of a distinctly similar historical regulation . . . can only prove so much" because "novelty does not mean unconstitutionality." Id.

In Gazzola, the Second Circuit held that the plaintiff gun dealers had standing to raise a derivative claim that regulations of their sales affected their customers' Second Amendment rights, but to be successful they would need to show that the regulation had "the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." Id. at *5; see also id. ("'gun buyers have no right to have a gun store in a particular location, at least as long as their access is not meaningfully constrained.' Nor do they have a right to 'travel' only short 'distances' or receive 'a certain type of retail experience.'" (quoting Teixeira v. County of Alameda, 873 F.3d 670, 679-80 (9th Cir. 2017)). Although the Gazzola Court did not directly conduct a Bruen analysis of New York's ammunition background check requirement, it strongly indicated that any challenge would fail for the same reasons articulated in the Superintendent's memorandum of law, ECF No. 19, namely that background checks do not impact the ability to acquire arms significantly enough to constitute an "infringement." See Gazzola, 2023 WL 8494188, at *6 (Second Amendment challenge failed where there was no evidence "that New York citizens will be meaningfully constrained – or, for that matter, constrained at all – in acquiring firearms and ammunition."); see also id. ("no evidence that [challenged] regulations will impose such burdensome requirements on firearms dealers that they restrict protections conferred by the Second Amendment.").

Just as the Circuit found that the Gazzola plaintiffs "ha[d] not shown that the New York law is so restrictive that it threatens a citizen's right to acquire firearms," id. at *5, so too have the Plaintiffs in this matter failed to demonstrate that a background check meaningfully constrains the right of law-abiding and responsible citizens to obtain ammunition. Cf. Chiumento Dec., ECF No. 19-1 ¶¶ 33-39 (demonstrating that 98.6% of checks result in an immediate "proceed" response, with many of the remainder resulting in quick approval after human review). And even if the background check did implicate the Second Amendment's text, the historical sources adduced by the Superintendent comfortably pass Bruen's history-and-tradition test, as informed by the Second Circuit's guidance in Antonyuk. Cf. Antonyuk, 2023 WL 8518003 at *17 (noting the "well-recognized historical tradition of preventing dangerous individuals from possessing weapons"); id. at *36 (certain kinds of disclosures are "reasonably included in the kind of background check that has long been permissible.").

Westlaw copies of the Second Circuit's Antonyuk and Gazzola decisions are attached as exhibits to this letter. We thank the Court for its time and consideration.

Respectfully submitted,

James M. Thompson
Special Counsel for Second Amendment Litigation
james.thompson@ag.ny.gov

Hon. Frank P. Geraci, Jr.
December 11, 2023
Page 3 of 3

Cc: All counsel of record (Via ECF)